**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION**

AARON MOSES PENA,                                                                                    PLAINTIFF
REG. #75418-279

2:13CV00075-BSM-JTK

J. SUTTON                                                                                                      DEFENDANT

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.     Why the record made before the Magistrate Judge is inadequate.

2.     Why the evidence proffered at the hearing before the District Judge (if such a

1

hearing is granted) was not offered at the hearing before the Magistrate Judge.

    3.    The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or

other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I. Introduction

This matter is before the Court on the Defendant's Motion to Dismiss (Doc. No. 24). Plaintiff filed a Response to the Motion (Doc. No. 29), together with a Motion to allow the submission of exhibits (Doc. No. 33.)  This Court granted his Motion, and pursuant to Fed.R.Civ.P. 12(d), notified the parties that Defendant's Motion would be construed as a Motion for Summary Judgment, and invited them to submit any additional relevant exhibits, brief, and/or affidavits (Doc. No. 35).  The parties have not submitted additional documents, and the Motion is ripe for review.

Plaintiff is a federal inmate who filed this civil rights action pursuant to <u>Bivens v. Six</u>

Unknown Named Agents, 403 U.S. 388 (1971), while incarcerated at the Federal Correctional Institution (FCI), Forrest City, Arkansas.[1] He alleges Defendant Sutton acted with deliberate indifference to his serious medical needs when Sutton failed to immediately arrange for medical treatment for Plaintiff, following injuries suffered in an assault. Plaintiff asks for damages from Defendant.[2]

## II.    Complaint

In his Complaint, Plaintiff alleges he was attacked by another inmate on March 14, 2013, at 8:30 a.m. (Doc. No. 2, p. 4.) Between 9:00 a.m. and 9:15 a.m., Defendant Sutton escorted him to a Lieutenant's office, rather than to the infirmary for treatment of six lacerations to his head. (Id.) Plaintiff was then escorted to a small holding cell where he was left for hours without medical assistance. (Id.) He claims he fears for his life constantly, due to the attack and the way he was treated by his care-givers. (Id.)

## III.   Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings,

---

[1] Plaintiff notified the Court of his transfer to FCI, Welch, West Virginia, on August 16, 2013 (Doc. No. 8.)

[2] Plaintiff's allegations against Defendant Wesner were dismissed on October 4, 2013 (Doc. No. 11.)

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

    A.    **Exhaustion**

Defendant states that Plaintiff's Complaint should be dismissed for failure to exhaust his administrative remedies, as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e. According to the Declaration of James D. Crook, supervisory attorney at the Federal Bureau of Prisons Consolidated Legal Center in Oklahoma City, Oklahoma, administrative records indicate that Plaintiff has never filed an administrative remedy request since his incarceration in the Bureau of Prisons, beginning March, 2011 (Doc. No. 25-1, pp. 3, 5.) Mr. Crook describes the three-step federal administrative remedy process, which is instituted by the filing of an informal resolution with staff, and then a formal resolution to the Warden through a BP-9 form at the Unit level. (Id. at p. 2.) Two appeals from that level are provided, to the Regional Director through a BP-10 form, and then to the General

Counsel for the Bureau of Prisons, via a BP-11 form (Id.)

In Response, Plaintiff admits that he did not submit a timely BP-9 form, but that he made numerous attempts to file administrative remedy requests, to which he did not receive responses. (Doc. Nos. 29, 31 pp. 2-3.) Plaintiff states after the incident occurred he wrote a cop-out to his counselor and when he did not respond, resubmitted three more cop-outs, again with no response. (Doc. No. 31, p. 2.) Plaintiff then sent cop-outs to his case manager, and eventually attempted to submit his complaint on a BP-10 form which was provided to him by fellow inmates. (Id., p. 3.) Finally, over a month after the incident occurred, his case manager provided him a BP-9 form, but it was too late, because he already filed this lawsuit. (Id., p. 4.) Plaintiff also states that during his transfer to FCI, West Virginia, his legal property was lost, and that the BP-10 which he filed also may have been mis-placed. (Id.)

According to the PLRA,

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit. Exhaustion of remedies includes filing a grievance and appealing such grievance through all appropriate levels. In this case, as mentioned above, the final level is the General Counsel for the Central Office of the Bureau of Prisons, pursuant to a BP–11 form. In Booth v. Churner, the United States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion

clearly enough, regardless of the relief offered through administrative procedures." 532 U.S. 731, 741 (2001). In addition, in <u>Chelette v. Harris</u>, the Eighth Circuit Court of Appeals held that "the statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them. Chelette failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there.'" 229 F.2d 684, 688 (8th Cir. 2000), quoting <u>Castano v. Nebraska Dep't of Corrections</u>, 201 F.3d 1023, 1025 (8th Cir. 2000). In <u>Johnson v. Jones</u>, the Court held that "under the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court....If exhaustion was not completed at the time of filing, dismissal is mandatory." 340 F.3d 624, 627 (8th Cir. 2003) (Emphasis in original). Finally, in <u>Jones v. Bock</u>, 549 U.S. 199, 218 (2007), the Supreme Court held that while the PLRA itself does not require that all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."

The Court in <u>Jones v. Bock</u> also held that the exhaustion requirement is an affirmative defense which must be pled and proved by the Defendant. 549 U.S. at 211-217. However, when prison officials prevent a prisoner from utilizing the grievance process, it is not considered an "available" remedy under § 1997e. <u>Miller v. Norris</u>, 247 F.3d 736, 740 (8th Cir. 2001).

In this particular case, Plaintiff does not dispute that he did not exhaust his remedies, but claims he attempted to pursue the process on several occasions. On each of those

occasions, officers failed to respond or provide to him the proper form needed. Defendant, who has the burden to prove the failure to exhaust, does not offer any explanation in response; therefore, the Court finds that Defendant has not met his burden in this case and that the case should not be dismissed on that basis.

### B.     Qualified Immunity

Defendant also asks the Court to grant him qualified immunity from liability, stating he did not violate a clearly established constitutional right to be free from deliberate indifference to his serious medical needs. See Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995). Defendant presents a copy of the medical record from March 14, 2013, which shows that the injury occurred at 8:45 a.m., and Plaintiff reported for treatment on that same day at 10:14 a.m. (Doc. No. 25-1.) Plaintiff presented with bleeding and bruising from cuts on his face and head, and the nurse used betadine, dermabond, and staples to close the lacerations. (Id.) Defendant also notes that Plaintiff does not claim he suffered a physical injury associated with Defendant's actions, and does not claim any injury related to his perceived delay in treatment. Finally, Plaintiff's "constant fear for his life" is not associated with any alleged actions of the Defendant.

Plaintiff maintains Defendant acted with deliberate indifference when he transported Plaintiff between 9:00 and 9:15 from his cell to the Lieutenant's office, rather than immediately to the infirmary. After that, Plaintiff was taken to a holding cell where he was left "for hours." (Doc. No. 30, p. 1.) Plaintiff states that the delay until he was seen by medical personnel is adequate evidence of deliberate indifference on the Defendant's part,

and resulted in unnecessary and unrestricted infliction of pain.  (Id., p. 7.)

Qualified immunity protects officials who act in an objectively reasonable manner. It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity is a question of law, not a question of fact.  McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether a Defendant is entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009); see also Saucier v. Katz, 533 U.S. 194, 201 (2001).[3]  Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

---

[3]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson v. Correctional Medical Services, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

Furthermore, in order to support a claim for an Eighth Amendment violation, Plaintiff must prove that Defendant was deliberately indifferent to a serious medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). See also Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). Furthermore, prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). In addition, an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (overruled in part on other grounds). Finally, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." Dulany, supra, 132 F.3d at 1240.

Upon close review of the evidence in support of the Summary Judgment Motion,

together with Plaintiff's Declaration (Doc. No. 31), the Court finds that Defendant acted reasonably under the circumstances, and that no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, established a violation of a constitutional or statutory right.

In his Declaration, Plaintiff states he was assaulted about 8:30 a.m. by another inmate, and defended himself. (Doc. No. 31, p. 1.) Plaintiff then returned to his cell and at 8:45, an officer came and escorted him to the Defendant's office. (Id.) Defendant asked him questions about the incident and Plaintiff lied and told him he fell from his bunk. (Id.) Defendant then escorted Plaintiff to the Lieutenant's office, where more questions were asked and pictures were taken of his injuries. (Id.) At that time "a group of officers took me" to a holding cell, where he waited until taken to the infirmary. (Id.)

According to this Declaration, after Defendant escorted Plaintiff to the Lieutenant's office, Defendant did not participate in Plaintiff's further transport to the holding cell or to the infirmary. The medical record clearly shows Plaintiff was treated at 10:14 a.m., which was about an hour and a half after Plaintiff suffered his injuries. Plaintiff admits that he initially lied to Defendant about the incident, and the medical record shows that he also lied to the nurse about how he became injured. (Doc. No. 25-1, p. 8.) The Court finds as a matter of law that the delay in taking Plaintiff to the infirmary for treatment amounts at most to negligence, and that his actions did not violate a clearly established right.

### III. Conclusion

IT IS, THEREFORE, RECOMMENDED, that Defendant's Motion to Dismiss, which

this Court construes as a Motion for Summary Judgment (Doc. No. 24), be GRANTED, and this case be DISMISSED with prejudice.

    IT IS SO RECOMMENDED this 16th day of May, 2014.

                                                                 _____
                                                                 JEROME T. KEARNEY
                                                                 UNITED STATES MAGISTRATE JUDGE